IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

IN RE: ADMINISTRATIVE SUBPOENA
NO. 25-1431-019

NO.  25-mc-91324-MJJ

UNDER SEAL

## GOVERNMENT'S RESPONSE TO BOSTON CHILDREN'S HOSPITAL'S MOTION TO QUASH

The Supreme Court and the First Circuit have made clear that valid administrative subpoenas must be enforced.  Because Boston Children's Hospital ("BCH") does not raise a colorable claim that the administrative subpoena in question is defective or invalid, this Court should overrule BCH's meritless objections and enforce the subpoena. The Government recognizes that the investigation concerns potential misconduct undertaken in the context of an ongoing political debate, but that fact does not in any way make the subpoena invalid or unenforceable.

## BACKGROUND

The Government is conducting an investigation into, among other things, whether off-label promotion and/or unlawful dispensing of puberty blockers and cross-sex hormones for use by minors violated federal law, including the Food, Drug, and Cosmetic Act ("FDCA").  Because public or private insurance plans were presented with claims related to off-label use of these medications, such a violation of the FDCA could constitute a "federal health care offense" as defined by 18 U.S.C. § 24.

**Government's Response to Motion to Quash Administrative Subpoena – Page 1**

BCH acknowledges that it extensively provides gender-related care to minors, including the use of puberty blockers and cross-sex hormones that are one of the foci of the investigation. BCH Memorandum ("Memo.") at 4-5. Puberty blockers are administered off-label for treating gender dysphoria, and they are not authorized by FDA for that use. *United States v. Skrmetti*, 605 U.S. __, 145 S. Ct. 1816, 1841 (June 18, 2025) (Thomas, J., concurring).

The instant subpoena to BCH was duly issued on June 13, 2025, and was served on counsel for BCH. The return date specified in the subpoena was set as July 9, 2025. BCH has not complied with the subpoena and has filed this motion to quash the subpoena.

## ARGUMENT

"As long as the investigation is within the agency's authority, the subpoena is not too indefinite, and the information sought is reasonably relevant, the district court must enforce an administrative subpoena." *United States v. Comley*, 890 F.2d 539, 541 (1st Cir. 1989).[1] Administrative subpoena enforcement proceedings "are designed to be summary in nature," and "as long as the agency's assertion of authority is not obviously apocryphal, a procedurally sound subpoena must be enforced." *United States v. Sturm, Ruger & Co.*, 84 F.3d 1, 5-6 (1st Cir. 1996) (collecting cases).

The Supreme Court, for its part, has stated that enforcing an administrative subpoena—a creature of statute—should not involve examining the merits of the

---

[1] Internal citations and quotations omitted throughout.

**Government's Response to Motion to Quash Administrative Subpoena – Page 2**

investigation or looking into the government's decision to institute such an investigation. *See United States v. Powell*, 379 U.S. 48, 56 (1964) ("There is no intimation in the legislative history that Congress intended the courts to oversee the [government's] determinations to investigate."). Instead, the Court looks to the language of the statute to see if it should be enforced. *Id*. And as long as "[t]he evidence sought by the subpoena [is] not plainly incompetent or irrelevant to any lawful purpose," it is "the duty of the District Court" to enforce the administrative subpoena. *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509 (1943).

BCH's motion invites this Court to ignore these well-established and unambiguous precedents because, at base, the subpoena at issue in this matter touches on a controversial topic over which there are high-profile political debates. Conspicuously absent from the controlling precedent above, however, is any suggestion that a district court should quash an administrative subpoena because the underlying conduct involves politically sensitive subject matters or because the subpoena recipient has political disagreements with the Executive Branch.

BCH is correct that gender-related care for minors is an area in which the United States has made strong statements. However, BCH is incorrect that the Executive Branch's position as to gender-related medical treatments for minors provides a legal basis to quash this subpoena. Indeed, while BCH's motion raises a number of issues that sound in public policy, states' rights, and politics, the motion does not meaningfully tie those objections to a statutory basis to quash an administrative subpoena properly issued under 18 U.S.C. § 3486.

**Government's Response to Motion to Quash Administrative Subpoena – Page 3**

### I.    The Subpoena Is Valid and Enforceable

"Using the normal tools of statutory interpretation, we begin, as always, with the text of the statute." *United States v. Winczuk*, 67 F.4th 11, 16 (1st Cir. 2023).  The statute at issue here was passed in 1996 as part of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), and the text of the statute sets forth a small number of basic requirements for the subpoena to be procedurally valid.  For example, the subpoena was issued in the investigation of FDCA-related federal health care offenses.  18 U.S.C. § 3486(a)(1)(A)(i)(I).  It was signed by an Assistant Attorney General of the United States, served on BCH, and it called for the production of nonprivileged documents arguably relevant to the investigation within 500 miles of BCH. 18 U.S.C. § 3486(a)(3).  Because the subpoena is "procedurally sound," it should be enforced.  *Sturm, Ruger & Co.*, 84 F.3d at 5-6.

#### a.    The Subpoena Was Issued for a Lawful Purpose.

BCH does not seriously argue that these limited statutory requirements are not met, nor does it argue that there is a Constitutional basis to set aside the subpoena. Instead, BCH recharacterizes the instant federal health care offense investigation somehow as an improper "attempt to federalize the regulation of medical care" with respect to gender-related care for minors and an unlawful act by the "Administration … to block BCH from providing medical care consistent with" state law. Memo at 7-10. Relying on these fundamental mischaracterizations, BCH argues that the Executive Branch's stated policy goals with respect to gender-related medical treatments on minors is not a Congressionally authorized purpose of 18 U.S.C. § 3486.

Government's Response to Motion to Quash Administrative Subpoena – Page 4

This argument is as unpersuasive as it is logically deficient.  As an initial matter, while BCH makes much of certain executive orders with respect to gender-related medical treatments on minors, the actual direction from the Attorney General to conduct this investigation is direct and clear: it authorizes only "appropriate" investigations of potential (i) FDCA violations  in relation to "manufacturers and distributors engaged in misbranding by making false claims about the on- or off-label use of" or unlawful "promotion of off-label uses of" certain drugs used in gender-related treatments of minors, and (ii) "false claims submitted to federal health care programs."  Memo. at 8. The subpoena at issue was served as part of such an "appropriate" investigation, and the statute puts no limits on federal health care offense investigations for which administrative subpoenas are authorized. 18 U.S.C. § 3486(a)(1)(A)(i)(I).  BCH does not seriously contend that the instant investigation does not *exist*—just that the investigation should be characterized in a different way.  But the statutory prerequisite of an extant investigation is obviously met.

Moreover, BCH's motion does not make a sufficient showing that producing a large hospital's nonprivileged business records—which already exist and could theoretically be obtained by private litigants via Fed. R. Civ. P. 45 subpoenas, by state attorneys general via CIDs, or by grand juries via grand jury subpoenas—could ever exceed the literal reach of a statute authorizing the government to obtain documents in investigations of federal health care offenses.  A health care institution producing pre-existing business records in response to an administrative subpoena is unremarkable and completely consonant with the statute at issue.

**Government's Response to Motion to Quash Administrative Subpoena – Page 5**

### b.    There Is No Free-Standing "Bad Faith" Exception.

BCH next suggests that this Court should undertake a plenary, free-wheeling inquiry into whether this subpoena has been issued in "bad faith."  Memo. at 12-17.  The law BCH cites does not authorize such wide-ranging inquiries.  In fact, the Eighth Circuit specifically rejected arguments indistinguishable from BCH's in the context of 18 U.S.C. § 3486 subpoenas and held that there is "no legal authority for requiring the Government to justify its administrative subpoenas by revealing . . . any [] facts revealing the motives behind a lawful investigation."  *United States v. Whispering Oaks Residential Care Facility, LLC*, 673 F.3d 813, 818 (8th Cir. 2012).  The other circuit-level decisions about § 3486 subpoenas also emphasize the limited nature of this Court's inquiry.  *Doe v. United States*, 253 F.3d 256, 264–65 (6th Cir. 2001); *United States v. Bailey (In re Subpoena Duces Tecum)*, 228 F.3d 341, 347–50 (4th Cir. 2000).

In fact, BCH's argument invites this Court to do exactly what all of these courts have said it should not do in an administrative subpoena enforcement matter, which is to litigate the Executive Branch's decision to investigate a matter and adjudicate the merits of a theoretical future enforcement action.  In contrast to BCH's suggestions, the Supreme Court has held repeatedly that enforcement of administrative subpoenas "must not be limited by forecasts of the probable result of the investigation," *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 216 (1946), and that an agency may "investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not," *United States v. Morton Salt Co.*, 338 U.S. 632, 642-43 (1950).  There is

simply no statutory basis to graft additional requirements onto the administrative subpoenas in question.

### c.    The Subpoena Was Not Issued in "Bad Faith."

Even if the Court were to examine the subpoena in light of BCH's accusation of purported "bad faith," BCH has not met its "extraordinarily heavy burden" to prove that such bad faith exists. *United States v. Kis*, 658 F.2d 526, 537 (7th Cir. 1981). The courts that have allowed a limited evaluation of the government's motivations have described the "bad faith" inquiry as whether the movant has demonstrated that the investigation is being conducted for an undisclosed, nefarious purpose, or whether the subpoena is not actually attempting to obtain evidence in furtherance of an investigation of potential federal offenses. *See Solis v. Forever 21, Inc.*, 2013 U.S. Dist. LEXIS 64462, *19 (C.D. Cal. Mar. 7, 2013) (collecting cases).

BCH has not met its heavy burden imposed by this standard. BCH's political concerns with Executive Branch officials amount to "speculation" and "assertion[s]" that the subpoena is improper, but offer little more.[2] *Id.* For example, BCH has not explained how responding to an administrative subpoena will "block BCH from providing medical care" in any way, as BCH baldly asserts. Memo. at 10. Rather, the government is

---

[2] Similarly, BCH's request for some sort of discovery into the government's investigation fails even under BCH's own preferred case law, which requires "extraordinary circumstances" to authorize discovery. *United States v. Markwood*, 48 F.3d 969, 982 (6th Cir. 1995). BCH does not mention the extraordinary circumstances test or attempt to meet it, nor does BCH articulate what it hopes to discern from such discovery. "[A]s a general matter, a defendant is not entitled to engage in counter-discovery to find grounds for resisting a subpoena." *Id.* (collecting cases).

attempting to obtain evidence using a Congressionally authorized subpoena power.  If the subpoena uncovers misconduct in the delivery of gender-related care to minors, and if the government addresses this misconduct, "this is not an improper use of the subpoena power . . . [r]ather, it is a desired result." *Forever 21, Inc.*, 2013 U.S. Dist. LEXIS 64462, at *19.

Moreover, none of the government's statements on this topic evince a desire to investigate BCH pretextually *for an undisclosed, nefarious reason* or to take actions against BCH specifically in a manner *inconsistent with the law*—which would be necessary to show "bad faith" under administrative subpoena law.[3] *See United States Immigr. & Customs Enf't v. Gomez*, 445 F. Supp. 3d 1213, 1216 (D. Colo. 2020) (subpoena ordered enforced because the recipient did not show that the subpoena was "pretext for some unstated, nefarious, legally inappropriate reason").  Rather, the statements reflect the Executive Branch's view that certain conduct in this general area may be illegal, that it should be investigated, and that those who committed crimes should be punished.  The actual texts of the Executive Branch statements at issue emphasize that investigations are to be "appropriate" and are to prioritize matters that involve deception and fraud—all terms that indicate the government is conducting genuine investigations into violations of federal law.  Memo. at 7-8 (citing Attorney General memorandum and Executive Order 14,187).

---

[3] The Supreme Court has cautioned about "reviewing a Presidential directive . . .  by reference to extrinsic statements." *Trump v. Hawaii*, 585 U.S. 667, 702 (2018).

The Executive Branch's interest in ensuring that the provision of certain medications is carried out without running afoul of federal law is entirely unremarkable. Just as federal officials may prioritize scrutinizing the fentanyl distribution chain—many parts of which are legal due to the fact that fentanyl is an FDA-approved medication—to stem opioid overdoses, federal officials may prioritize ensuring that gender-related health care to minors is being delivered in a way that does not violate federal law. Indeed, BCH's argument boils down to a basic non-sequitur: (1) the President wants to use existing federal law to curtail the practice of gender-related medical treatments on minors; (2) this is an improper purpose because such treatments are legal under Massachusetts law; and (3) the subpoena therefore must have been issued for an improper purpose or in bad faith. Memo. at 12-17. But the Supreme Court recently held that eliminating gender-related pharmaceutical and surgical treatments of minors is a rational governmental purpose that is not improper at all. *Skrmetti*, 145 S. Ct. at 1843-49. If a state government can properly and rationally ban gender-related pharmaceutical and surgical care for minors in its entirety, the Executive Branch is obviously permitted to pursue the same policy goal within the bounds of the law.

BCH also does not offer the Court a coherent standard by which to judge whether a subpoena is issued for an "improper purpose" on a politically charged topic. BCH obviously believes that its provision of gender-related care for minors is "proper," and so BCH also believes the federal government's investigations into federal health care offenses related to such practices must *ipso facto* be "improper." But on that circular reasoning, any recipient of a subpoena could obtain quashal based on "bad faith" simply

by asserting that it acted properly. BCH's standard appears to be that if it disagrees politically with the policy positions of the current administration and engages in conduct related to those policy positions, it should be entitled to quash subpoenas duly authorized by federal law and/or obtain discovery about the investigation. That is not the standard. *See SEC v. McGoff*, 647 F.2d 185, 194 (D.C. Cir. 1981) (holding that an allegation of political targeting by the Carter Administration was not enough to authorize inquiry into the agency's motives in issuing an administrative subpoena).

### d.    The Investigation's Basis Is Legitimate

Even if the Court considers the basis of the investigation, the Court need not look far to assure itself that the investigation is legitimate. For example, in its memorandum in support of the motion, BCH cites the *Standards of Care for the Health of Transgender and Gender Diverse People*, Version 8 ("SOC 8"), published by the World Professional Association for Transgender Health ("WPATH"). Memo. at 5 n.9. As just one data point showing adequate predication for this investigation, Justice Thomas' recent concurrence in *Skrmetti* lays out numerous concerning pieces of evidence suggesting that WPATH based its guidance—which extensively counsels the off-label use of powerful pharmaceuticals—"on insufficient evidence and allows politics to influence its medical conclusions." *Skrmetti*, 145 S. Ct. at 1845-49.

Noting "the lack of consensus over the efficacy and ethics of pediatric sex-transition treatments," Justice Thomas detailed how gender-related care for minors in the United States has been littered with potential consumer-protection violations: false statements made to induce patient and parental consent to off-label drug use and other

**Government's Response to Motion to Quash Administrative Subpoena – Page 10**

life-altering procedures; powerful pharmaceuticals casually being given off-label to very young minors, causing lifelong side effects; purported treatment guidelines based on false or insufficient evidence; and other alarming trends that the Executive Branch could reasonably believe deserve exploration. *Id.* Furthermore, much of the data cited by Justice Thomas came to light in *Boe v. Marshall*, 22-cv-184 (M.D. Ala.), where WPATH undertook significant and ultimately unsuccessful efforts to block access to records showing SOC 8's development.[4] BCH does not even mention these issues, let alone seek to explain why the government is not permitted to investigate them.

Moreover, while BCH is correct that the FDCA does not generally regulate the practice of medicine, federal health care law obviously does proscribe many practices directly related to the practice of medicine, such as: the unlawful dispensing of unapproved drugs, prescription medications, and controlled substances, 21 U.S.C. §§ 331(a), 841; the off-label promotion of prescription medications, 21 U.S.C. § 331(a); the making of false statements in relation to claims to public and private insurance payors, 18 U.S.C. § 1035; fraud on patients and insurance payors, 18 U.S.C. § 1347; and many others. BCH's suggestion that the federal government does not have a role in ensuring medical practitioners obey federal law while practicing medicine is absurd, as is its

---

[4] For example, in denying an effort by WPATH to keep records of SOC 8's development from being publicly released, the District Court observed that WPATH "touts its guidelines and standards of care for treating transgender children as the product of rigorous science and broad consensus. Given this wide acceptance of what WPATH claims to be reliable evidence, one would think it would be willing and eager to demonstrate as much. It is not." *Boe v. Marshall*, 22-cv-184 (M.D. Ala.), (ECF No, 754, *Memorandum Opinion and Order Granting Time Sensitive Motion for Relief*, June 9, 2025.)

**Government's Response to Motion to Quash Administrative Subpoena – Page 11**

attempt to equate the issuance of this subpoena with an unlawful executive attempt to hijack States' rights to regulate the practice of health care.

BCH also argues that government enforcement in this area will purportedly chill the rights of Massachusetts residents to receive gender-related care. The argument is meritless. If persons in Massachusetts committed federal health care offenses while delivering gender-related treatment for minors, federal government enforcement of federal law against those persons would be fully consonant with the Supremacy Clause and would not infringe the rights of Massachusetts residents under state law—because they have no right under state law to violate federal law. *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 663 (1993) ("Where [state law] conflicts with, or frustrates, federal law, the former must give way."). Moreover, BCH and any other person will be able to raise any colorable defenses they wish in any enforcement action the government may or may not ultimately bring in this space.

Assuming incorrectly that the entire investigation is about billing fraud potentially committed by BCH, BCH also argues that it has no incentive to commit billing fraud due to Massachusetts law permitting the care at issue, and therefore that the subpoena does not seek relevant documents. Memo. at 18. First of all, even if there is a smaller incentive for fraudulent billing because Massachusetts law permits BCH to prescribe the medications at issue, there still may be an incentive for BCH to bill public and private payors fraudulently for drugs being prescribed off-label—because the payors are more likely to cover drugs for some purposes over others.

**Government's Response to Motion to Quash Administrative Subpoena – Page 12**

But more fundamentally, as described above, federal health care offenses in this space are potentially wide-ranging, and the statute does not distinguish between targets, subjects, and witnesses. Here, the government has not made a decision as to whether BCH is a target—so whether BCH itself complied with all relevant laws is not relevant. BCH may be simply a witness to, for example, pharmaceutical companies promoting puberty blockers for off-label use. Or it may be a witness to whom other people or entities directed false statements on the topic of pharmaceutical treatments in gender-related care for minors. Or BCH personnel may have committed federal health care offenses without the knowledge of BCH management. BCH's motion does not discuss these obvious examples or explain why they are improper. Because BCH has failed to show that such objectives are not "irrelevant to any lawful purpose," the subpoena must be enforced on these grounds alone. *Endicott Johnson Corp*, 317 U.S. at 509.

## II.    BCH's Overbreadth and Burden Arguments Are Meritless

BCH next argues that the subpoena is overbroad and burdensome, but it does not explain to the Court how the specific requests at issue actually run afoul of the statute or governing law. A request for "all records" in a specific area is broad but is a typical document request in the fact-finding stage of an investigation and is not obviously overbroad to the extent that the Court could or should limit it. *McGoff*, 647 F.2d at 192–93 ("We agree that the demands are broad. But the nature of the inquiry precludes a trim list of requests."). Indeed, "the measure of relevance used in subpoena enforcement actions is quite broad." *United States v. Fla. Azalea Specialists*, 19 F.3d 620, 624 (11th Cir. 1994); *Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*, 878 F.2d 875,

Government's Response to Motion to Quash Administrative Subpoena – Page 13

882 (5th Cir. 1989) (an administrative subpoena will survive a relevance challenge so long as it "touches a matter under investigation").  Because BCH is an acknowledged provider of the type of health care services under investigation, the individual requests—which seek records related to the provision of those services—are also valid under the statute.

BCH also does not offer the Court any limiting constructions at all, nor has it meaningfully met and conferred with the United States on the scope of the subpoena.  If the Court upholds the subpoena as a legal matter but wishes to consider the breadth of specific requests, the government respectfully requests an opportunity to meet and confer with BCH counsel to hear their specific concerns about specific requests.

The only requests to which BCH specifically objects are the government's requests for records of services provided to patients.  First, as a legal matter, 18 U.S.C. § 3486 subpoenas are colloquially referred to as "HIPAA subpoenas" not because they are used to investigate HIPAA violations *per se*, but rather because Congress enacted the provision as part of HIPAA specifically to allow the government to obtain HIPAA-protected health information of patients in health care investigations.  It is hard to understand how the government's request for patient files is "egregious[]," Memo. at 19, when the statute at issue was passed in order to allow the government to obtain these specific items.

The Fourth Circuit has already rejected this argument and held that the government's interests in obtaining patient files using a § 3486 subpoena outweigh patient privacy concerns because the disclosure to the government of patient records is

not "meaningfully distinguishable from a host of other unpleasant invasions of privacy that are associated with many facets of health care." *In re Subpoena Duces Tecum*, 228 F.3d at 351.

The Fourth Circuit also held that privacy concerns about patient records were unfounded because this statute already provides privacy protection for patient information. *Id*. ("[The government's] interest outweighs the privacy rights of those whose records were turned over to the government, particularly in light of the limitation placed on uses of subpoenaed information by § 3486."). To wit, the statute requires the government to return records if the investigation does not ripen into an enforcement action. 18 U.S.C. § 3486(a)(8). More relevant to BCH's objections, the statute generally prohibits the government from using or disclosing "health information about an individual" that is obtained via this subpoena, and it further generally prohibits the government from using protected health information about a patient against that patient. 18 U.S.C. § 3486(e). Finally, the statute makes people and entities responding to these types of subpoenas immune from civil liability for responding in good faith. 18 U.S.C. § 3486(d).

Patient health information is frequently sought and obtained in federal health care offense investigations—in fact, it is difficult or impossible to investigate the provision of health care services to patients if the government cannot obtain information about the provision of health care services to patients. Nonetheless, the government is ready and willing to negotiate with BCH about the scope of these specific requests to attempt to address its concerns.

**Government's Response to Motion to Quash Administrative Subpoena – Page 15**

## **CONCLUSION**

The government respectfully requests that the Court overrule BCH's objections,

deny its motion to quash, and compel BCH to comply with the subpoena.

Dated this 22nd day of July, 2025.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

JORDAN C. CAMPBELL
Deputy Assistant Attorney General

LISA K. HSIAO
Acting Director
Consumer Protection Branch

*/s/ Patrick R. Runkle*
ROSS S. GOLDSTEIN
PATRICK R. RUNKLE
Assistant Directors
SCOTT DAHLQUIST
Trial Attorney

U.S. Department of Justice
Consumer Protection Branch
P.O. Box 386
Washington, DC 20044
Tel: (202) 353-4218
ross.goldstein@usdoj.gov

**Government's Response to Motion to Quash Administrative Subpoena – Page 16**

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of July, 2025, I caused a true and correct copy of the foregoing Opposition to Boston Children's Hospital Motion to Seal to be served via email, pursuant to Fed. R. Civ. P. 5(b)(2)(E) on the following counsel, who have consented in writing to electronic service by email:

Joshua S. Levy
ROPES & GRAY LLP
800 Boylston Street
Boston, MA 02119
Joshua.levy@ropesgray.com

Douglas Hallward-Driemeier
ROPES & GRAY LLP
2099 Pennsylvania Avenue, NW
Washington, DC 20006
douglas.hallward-
  driemeier@ropesgray.com

Brian R. Blais
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036
brian.blais@ropesgray.com

Amanda Masselam Strachan
WILMER CUTLER PICKERING HALE &
  DORR LLP
60 State Street
Boston, MA 02109

Boyd Johnson
Alan Schoenfeld
WILMER CUTLER PICKERING HALE &
  DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
boyd.johnson@wilmerhale.com
alan.schoenfeld@wilmerhale.com

Brian M. Boynton
WILMER CUTLER PICKERING HALE &
  DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
brian.boynton@wilmerhale.com

_/s/ Ross S. Goldstein_